Filed 5/27/26  P. v. Molina CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>CRISTIAN MOLINA,<br><br>　　　Defendant and Appellant. | B343734<br><br>(Los Angeles County<br> Super. Ct. No. 24SFCF00666) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael Terrell, Judge.  Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, and Allison H. Chung, Deputy Attorney General, for Plaintiff and Respondent.

A jury convicted defendant Cristian Molina of assault with a semiautomatic firearm and felon in possession of a firearm.  He argues on appeal that the trial court abused its discretion by denying his motion to strike his prior strike conviction under *Romero*.[1]  We disagree and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND
**A.     The Evidence at Trial**

1.     *Prosecution's Case*

In March 2024, Kara Brayton texted Jeffrey Morgan asking him to meet her at the Roxford Motel on San Fernando Road in Sylmar.  Morgan and Brayton were friends, and both struggled with drug addiction.  Brayton told Morgan she was in trouble and was afraid of a man who would not leave her alone.  She offered Morgan drugs to help her leave the motel.  Morgan arrived at the motel at approximately 3:00 a.m.

After speaking with Brayton, Morgan went to take a shower in her room.  At about 7:00 a.m., Morgan heard someone banging on the door.  Morgan said Brayton looked scared and told him not to open the door.  Morgan got dressed, and after the banging continued for about 20 minutes, Morgan decided to open the door to talk to the person outside.  Molina ran into the room when Morgan opened the door.  Molina punched Morgan, and Morgan punched back.  Morgan ran out of the motel room after Molina reached for his waistband.  Brayton previously told Morgan she thought Molina had a gun.  Morgan ran onto San Fernando Road.  He heard a loud bang, felt something hit his leg,

---

[1]     *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

2

and dropped to the ground.  Morgan looked back and saw Molina pointing a gun at him.  Molina then ran back toward the motel.

Police officers responded to a call of shots fired in the area.  They found a single 9-millimeter casing on San Fernando Road.  The officers then responded to a call regarding a gunshot wound victim.  They located Morgan outside a residence with a gunshot wound to his right leg.  Morgan directed the officers to the Roxford Motel.  The officers went to the motel and spoke with the manager.  The manager told the officers about Molina's room and gave them the California ID card Molina used to get the room.  The officers found Brayton inside the room.  She confirmed Molina was the "same guy that came to the door" and got the room for her.

2.  *Defense Evidence*

Molina testified on his own behalf.  He said he and Brayton were dating in March 2024.  The night before the incident, he rented a room for them at the Roxford Motel.  He left around midnight to work for a delivery service until 3:00 or 4:00 a.m.  After returning, he left again when Brayton asked him to because she wanted to speak with her father.  Molina estimated he was gone for two to four hours.

When Molina returned, he knocked and became worried because he could not get ahold of Brayton.  He saw Morgan, who he did not know, after the door was opened.  Molina felt scared, angry, and confused.  Molina said Morgan punched him before he punched Morgan.  Molina chased after Morgan because Molina was scared and did not know if Morgan was going to hurt him or Brayton.  Molina pulled a gun out of his pocket to scare Morgan, but Molina accidentally pulled the trigger with the gun pointed

3

toward the floor.  Molina thought Morgan tripped, so Molina went back to the motel.

Molina did not wait for police to arrive because he knew he was not supposed to have the gun.  He said he had the gun to protect himself and Brayton because they were in a dangerous area.  The prosecution and defense stipulated that on the day of the incident, Molina was a person prohibited under the law from possessing or owning a firearm.

## B.     The Jury's Verdict

A jury found Molina guilty of assault with a semiautomatic firearm (Pen. Code, § 245, subd. (b))[2] and possession of a firearm by a felon (§ 29800, subd. (a)(1)).  As to the former, the jury found true Molina personally used a firearm (§ 12022.5, subds. (a) & (d)) and personally inflicted great bodily injury upon the victim (§ 12022.7, subd. (a)).

At a bifurcated proceeding, the trial court found true that Molina suffered a prior strike conviction for a robbery within the meaning of the Three Strikes law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)).  The court further found true two aggravating factors under California Rules of Court, rule 4.421:  Molina's convictions were numerous and of increasing seriousness, and the victim was particularly vulnerable.

## C.     Molina's *Romero* Motion and Sentence

Molina filed a motion to dismiss his prior strike pursuant to *Romero*.  He asserted the prior strike conviction was for a robbery committed in 1996 when he was 19 years old.  He argued

---

[2]     Further statutory references are to the Penal Code.

4

that except for a misdemeanor battery in 1995, none of his other convictions involved physical violence. He further argued that since his last conviction in 2018 for "possession of drugs/alcohol in jail/prison," he had made positive changes and had strong support from his family and friends. He contended he was 49 years old and acted in the heat of passion when he confronted Morgan.

The prosecutor objected to dismissal of the prior strike at sentencing, arguing Molina's criminal history showed a "continuous nature[,] readiness, willingness, [and] ability" to engage in acts of violence. The prosecutor outlined Molina's criminal history. After Molina sustained a juvenile petition for burglary in 1994, he was convicted of misdemeanor battery in 1995 at age 18. In 1996, Molina was convicted of second degree robbery and sentenced to six years in prison. In 2002, he was convicted of possession of a firearm by a felon and sentenced to 32 months imprisonment. In 2011, he was convicted of misdemeanor resisting, obstructing, or delaying a peace officer or emergency medical technician and sentenced to a 24-month probation term. In 2013, Molina was convicted of five felonies: possession of a controlled substance for sale and illegal possession of ammunition, for which he was sentenced to two 16-month terms of imprisonment; carrying a concealed dirk or dagger and obstructing or resisting an executive officer, for which he was sentenced to two four-year terms of imprisonment; and violence against an intimate partner, for which he was sentenced to two years imprisonment. In 2018, Molina was convicted of possession of narcotics, alcohol, or drug paraphernalia in prison for which he was sentenced to four years imprisonment.

5

The trial court denied Molina's request to strike his prior strike. The court stated it looked at the "totality of the criminal history" and found Molina had "conviction after conviction that resulted in state prison time and so it is not a situation where someone made a mistake as a young man, as a 19 year old and learned from that mistake." The court did not believe Molina was outside the spirit of the Three Strikes law. The court sentenced Molina to an aggregate term of 20 years four months, which included application of the Three Strikes law. This appeal followed.

## DISCUSSION

Molina argues the trial court abused its discretion in denying his request to strike his prior strike conviction. We disagree.

Under *Romero*, "a trial court may strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony . . . 'in furtherance of justice' pursuant to [ ] section 1385(a)." (*People v. Williams* (1998) 17 Cal.4th 148, 158 (*Williams*).) A sentencing court "must consider whether, in light of the nature and circumstances of [defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Id.* at p. 161.) The Three Strikes law "creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper" (*People v. Carmony* (2004) 33

6

Cal.4th 367, 378 (*Carmony*)), and "'carefully circumscribes the trial court's power to depart from this norm.'" (*People v. Bernal* (2019) 42 Cal.App.5th 1160, 1170 (*Bernal*).)

We review a trial court's denial of a *Romero* motion for abuse of discretion. (*Carmony*, *supra*, 33 Cal.4th at p. 374.) A trial court abuses its discretion by declining to strike a prior strike only if the defendant so clearly falls outside the spirit of the Three Strikes law that no reasonable person could disagree. (*Id.* at p. 378.) Only extraordinary circumstances warrant a finding that a defendant falls outside the spirit of the law. (*Ibid.*) Accordingly, "the circumstances where no reasonable people could disagree that the [defendant] falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Ibid.*)

The circumstances in this case were not so extraordinary. Molina had a continuous criminal history spanning multiple decades after suffering the prior strike. His convictions included violent crimes (e.g., battery and violence on an intimate partner) and other serious offenses (e.g., possession of a firearm by a felon and carrying a concealed dirk or dagger), which the trial court reasonably found were of increasing seriousness. Indeed, his current offenses involved Molina unlawfully possessing a firearm and shooting the victim as the victim was running away from him. Molina's convictions reflect a long criminal history and an inability "to remain out of prison for more than a few years at a time." (*People v. Mendoza* (2022) 74 Cal.App.5th 843, 857; see also *People v. Sullivan* (2007) 151 Cal.App.4th 524, 571 ["'three strikes law punishes not only [the defendant's] current offenses, but also his recidivism'"].) He did not reform his ways after suffering the prior strike. (*Williams*, *supra*, 17 Cal.4th at p. 163.)

The trial court also considered the mitigating factors highlighted by Molina on appeal, including that he suffered the strike in 1996 when he was 19 years old, that he was 49 years old at the time of sentencing and struggled with drug addiction and homelessness, and that he had support from family and friends. However, the presence of mitigating circumstances is not enough to render the court's decision an abuse of discretion. (*Bernal*, *supra*, 42 Cal.App.5th at p. 1170; see *People v. Avila* (2020) 57 Cal.App.5th 1134, 1141 ["remoteness of prior strikes alone is not sufficient to take a defendant out of the spirit of the Three Strikes law"]; cf. *Williams*, *supra*, 17 Cal.4th at p. 163 [trial court abused discretion in granting *Romero* motion, despite defendant's youth at time of prior strikes, because defendant persisted in criminal activity].) Moreover, "judicially mandating the predominance" of these factors would "eviscerate[ ] the trial court's discretion" under *Romero*. (*Carmony*, *supra*, 33 Cal.4th at p. 379.)

Therefore, Molina does not show the trial court abused its discretion by finding he was within the spirit of the Three Strikes law.

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                                    MORI, Acting P. J.

We concur:


TAMZARIAN, J.


COGLIATI, J. **

---

**      Judge of the Santa Cruz County Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.